## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JASON L. [1],

      **Plaintiff,**

v.

                                 **Case No. 21-cv-00595-SPM**

KILOLO KIJAKAZI,
**Acting Commissioner of
Social Security,**

      **Defendant.**

## MEMORANDUM AND ORDER

### McGLYNN, District Judge:

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) benefits pursuant to 42 U.S.C. § 423 and 42 U.S.C. §§ 1382 and 1382c, respectively[2] (Doc. 1).

### PROCEDURAL HISTORY

On August 22, 2019, plaintiff applied for DIB, alleging a disability onset date of June 25, 2014. (Tr. 200).   On December 20, 2019, plaintiff was advised that he did not qualify for benefits and his claims was disapproved. (Tr. 135-138). On January 4, 2020,

---

[1] In keeping with the court's practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.,* and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.,* and 20 C.F.R. pt 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

plaintiff requested reconsideration. (Tr. 140). On May 21, 2020, plaintiff was advised that his claim had been independently reviewed; however, the previous denial was found to be correct. (Tr. 143-147). On June 3, 2020, plaintiff requested a hearing before an Administrative Law Judge ("ALJ") because he disagreed with the determination and claimed to be disabled and unable to work as a result of a severe injury to his spine. (Tr. 148-149). After holding an evidentiary hearing on November 2, 2019, the ALJ denied the application on November 19, 2020. (Tr. 12-29). Plaintiff requested review of the ALJ's decision, but the Appeals Council denied plaintiff's request for review on April 12, 2021. (Tr. 1-6). In accordance with the foregoing, the ALJ's decision is the final agency decision subject to judicial review. Plaintiff has exhausted administrative remedies and filed a timely complaint with this Court (Doc. 1).

## ISSUES RAISED BY PLAINTIFF

In his brief, plaintiff indicates that there are two primary issues to be decided:

1. Whether or not the ALJ's assessment of Plaintiff's credibility is supported by substantial evidence; and,

2. Whether Plaintiff has been under a disability since June 4, 2019?

## APPLICABLE LEGAL STANDARDS

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct.

1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   See *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ, Katherine Jecklin, followed the five-step analytical framework described above. She determined that plaintiff had not worked at the level of substantial gainful activity since June 4, 2019, which was the alleged date of onset. (Tr. 17). She found that plaintiff met the insured requirements of the Social Security Act through December 31, 2019. (*Id*.). Plaintiff was born on October 10, 1973 and was 46 years old on the alleged date of onset, which is defined as a younger individual age 45-49. (Tr. 24). Plaintiff had at least a high school education. (*Id*.).

The ALJ found the plaintiff had the following severe impairments through the date last insured: degenerative disc disease of the lumbar spine and obesity. (Tr. 17).

Regarding residual functional capacity ("RFC"), the ALJ found the plaintiff had the RFC to perform sedentary work, as defined in 20 CFR 404.1567(a) [3],

---

[3] Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

"except the claimant could never climb ladders, ropes, or scaffolds. He could occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and balance on uneven, narrow, slippery, or erratically moving surfaces. [Plaintiff] could frequently balance on even or all other terrain. He must have been allowed to stand for one to two minutes after sitting for 45 minutes while he remained at his workstation. He could have no more than occasional exposure to vibration and to hazards, such as unprotected heights." (Tr. 18).

In making her RFC assessment, the ALJ noted that she considered all symptoms and the extent they were consistent with the objective medical evidence and other evidence, pursuant to 20 CFR 404.1529 and SSR 16-3p. (Tr. 19). The ALJ also considered the medical opinion(s) and prior administrative medical findings, pursuant to 20 CFR 404.1520c. The ALJ found that plaintiff's statements as to the intensity, persistence and limiting effects of his symptoms were inconsistent with the objective evidence contained within the records[4]. (*Id.*).

The ALJ found that Plaintiff was unable to perform any past relevant work through the date last insured. (Tr. 23). The ALJ further found that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that the plaintiff was "not disabled", whether or not he has transferable job skills. (Tr. 24).

Through the last date insured, considering plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that the plaintiff could have performed. (*Id.*). Specifically, the ALJ

---

[4] The ALJ cited to specific examples like statements made by plaintiff during the hearing that were inconsistent with the medical evidence and other evidence within the record.

determined that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles regarding the following jobs that were available in the national economy and which could be performed by an individual such as plaintiff: (1) Information Clerk; (2) Order Clerk; and, (3) Document Preparer. (Tr. 24-25). Accordingly, the ALJ concluded that plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 25).

Finally, the ALJ found that the plaintiff has not been under a disability at any time from June 4, 2019, the alleged onset date, through December 31, 2019, the date last insured. (*Id.*).

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the records is directed to the points raised by plaintiff.

**1. Agency Forms**

Plaintiff was born on October 10, 1973. (Tr. 200). In a prior claim[5], he alleged that originally became unable to work because of his disabling condition on June 25, 2014 and was receiving workers' compensation, public disability, or black lung benefits, which ended on January 31, 2017. (*Id.*).

---

[5] This prior application was denied in June 2019 and is not the subject of this appeal. (Tr. 93-104).

In this claim, he alleged a disability onset date of June 4, 2019 due to a degenerative disc disease that included a micro discectomy in 2008 and a spinal fusion in 2016, which resulted in chronic pain. (Tr. 34, 111, 122). He further claimed to not have been engaged in substantial gainful activity since that date through his date last insured of December 31, 2019. (Tr. 17).

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the hearing on November 2, 2020. (Tr. 30-45).

Plaintiff resides with his wife. (Tr. 37). He had a prior disability claim denied the day before the onset of this claim. (Tr. 36). Nothing has changed, he just believes the decision was wrong. (*Id.*). He could not stand or walk for long distances or long periods, and twice a month was in too much pain to get out of bed. (*Id.*).

From June 4, 2019 through the last half of the year, he was unable to sit for long periods of time (20-30 minutes) without getting up and moving. (*Id.*). He tried to move around, but had limits, and if he started hurting, he sat in his recliner or laid down in bed. (Tr. 37). He would rest 45-60 minutes in the recliner before trying something else. (*Id.*). He had to limit what he did so he did not take pain killers all the time. (Tr. 37-38). He estimated reclining and being in bed 3/5 of every day, not including bedtime. (Tr. 38). Plaintiff can lift a gallon of milk, but not much more. (Tr. 39). His pain management doctor said nothing is going to change and there is no further treatment. (Tr. 38).

Plaintiff goes to Wal-Mart weekly with his wife. (Tr. 39). He cannot do much there, but it is a way to get out of the house. (Tr. 40). He gets a cart right away and walks a little but needs to take breaks on the shoe bench to rest. (*Id.*).

As for housework, plaintiff cannot do laundry because it is in the basement and he avoids stairs. (*Id.*). He cannot use the dishwasher or oven because they are too low to the ground. (*Id.*). He can heat things up in the microwave but cannot stand waiting long. (Tr. 41).

He drives himself to the doctor (Tr. 40). He has some trouble bathing himself, but it is manageable. (*Id.*). He is limited when dressing himself below the waist. (Tr. 41). Plaintiff typically wakes around 6:00 and goes to bed around 2:00 a.m. (*Id.*). He averages 4-6 hours of sleep each night (*Id.*).

A vocational expert (VE), Melinda Stahr, testified that a sedentary RFC would eliminate plaintiff's past work. (Tr. 42). Her testimony concurred with the ALJ's hypothetical based upon the RFC restrictions. (Tr. 42-43). In other words, the VE indicated that the individual in the hypothetical could perform work at the sedentary, unskilled level in jobs such as information clerk, order clerk, and document preparer. (Tr. 43). According to the VE, sedentary jobs do not generally require walking, standing, crouching, or running on narrow, slippery or erratically moving surfaces. (*Id.*). The VE opined that 15% or more of workday off task would contradict competitive employment. (Tr. 44). The VE also opined that individuals who miss at least 2 days of work per month are unable to maintain competitive employment. (Tr. 44).

### 3. Relevant Medical Records

In 2008, plaintiff underwent a microdiscectomy. In 2016, plaintiff underwent spinal fusion surgery on his L2-L3 and L3-L4 vertebrae by Dr. David Kennedy.

Following the 2016 surgery, plaintiff's treatment consisted of pain management with Kaylea Boutwell at Katalyst Pain Management. This claim alleges disability beginning June 4, 2019 and the first medical visit after that date occurred on July 23, 2019. (Tr. 303-306). At that visit, Dr. Boutwell noted that plaintiff described his pain as a 3/10. Dr. Boutwell reviewed plaintiff's medications and surgical history, and discussed making lifestyle changes. On exam, Dr. Boutwell reported that plaintiff was in no acute distress and that his low back remained "completely unchanged from nearly all previous visits". Plaintiff did not use any assistive ambulatory device and had only a slightly antalgic gait. Dr. Boutwell indicated that there were no significant objective changes since the last visit[6].

On October 30, 2019, plaintiff returned to Dr. Boutwell at Katalyst Pain Management (Tr. 362-364). Although he advised his pain was somewhat worse with the weather changing to cooler and wetter, Dr. Boutwell reported that palpation did not elicit any increased discomfort or tenderness and noted that the 10-system review was unremarkable with the exception of the musculoskeletal complaints. The bilateral lower extremity sensory exam was within normal limits. Dr. Boutwell observed that plaintiff did not use any type of assistive device and that he only had a slight antalgic gait. Dr.

---

[6] Prior to the alleged onset date of June 4, 2019, plaintiff last saw Dr. Boutwell on April 30, 2019.

Boutwell continued plaintiff on his medications of gabapentin and hydrocodone, but was optimistic she could reduce the dosages when approaching spring and summer months.

On November 13, 2019, a consultative exam was conducted by Dr. Veronica Weston (Tr. 335-343). Dr. Weston was aware of plaintiff's medical history, including the microdiscectomy and fusion. She was also aware that plaintiff was seeing Dr. Boutwell for pain management and was treating with hydrocodone and gabapentin. Dr. Weston observed that plaintiff was well-nourished and obese and had a normal gait. She also observed that he brought no assistive device to the exam room, that he needed no help changing for the exam, and that he needed no help getting on and off the exam table, although he rose from the chair slowly. Her findings noted some tenderness to palpation along the lumbar spine radiating toward the gluteal region and across the waistline with decreased range of motion of the lumbar spine.

On November 15, 2019, lumbosacral spine x-rays that had been taken as part of Dr. Weston's examination were reviewed by Dr. Joseph Gottesman, a board-certified radiologist. (Tr. 340). The report indicated that plaintiff was status post dorsal surgical fixation of and discectomy at L2-L4 with surgical hardware in place, as well as status post bilateral laminectomies at the L3 level. Dr. Gottesman noted that the height of all the vertebral bodies and of the remaining intervertebral disc spaces appeared to be well maintained. He further noted that no fractures or subluxation was seen.

### 4. State Agency Consultations

Two state agency consultants assessed plaintiff's RFC based upon a review of the record and determined that he was not disabled. (Tr. 111-119, 122-133). The initial

review was completed on December 13, 2019 and the reconsideration was performed on May 19, 2020. In both, the medical evidence showed that plaintiff's condition caused some restrictions, but that he was able to adjust to other work.

## ANALYSIS

### I.   Credibility

Plaintiff first argues that the ALJ erred in her assessment as there was substantial evidence to support his claim.

The findings of the ALJ as to the accuracy of the plaintiff's allegations are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding."   *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

On March 28, 2016, SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *2, became effective, replacing SSR 96-7p, and providing new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated. Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility." *Id*. The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law

judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). Still, the standard remains whether the ALJ's assessment was patently wrong.

The ruling specifies that the SSA uses "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms," but continues to utilize the regulatory factors relevant to a claimant's symptoms, including daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *7-8; 20 C.F.R. § 404.1529(c)(3).

As required by § 404.1529 and SSR 16-3p, the ALJ considered the objective medical evidence; the course of treatment; the findings of the healthcare providers on mental exams; plaintiff's own statements to his treaters; his daily activities; and the medical opinions. The ALJ considered plaintiff's allegations of disabling symptoms and explained why they did not bear on his contention that he was unable to work at even the sedentary level of exertion. For example, the ALJ noted that the microdiscectomy and spinal fusion surgery, along with the post-fusion imaging, showed "satisfactory

progression of fusion". She also noted Dr. Boutwell's pain management notes regarding bilateral lower extremity sensory examinations remaining within the normal limits as well as the normal reflexes and "only slightly antalgic gait" without any assistive device.

In the absence of any contrary opinion from plaintiff's treating provider, the ALJ also considered the consultative exam in November of 2019 at which time plaintiff had a normal, unassisted gait and normal reflexes. Moreover, the ALJ considered plaintiff's obesity and SSR 19-2p, which provides that obesity can cause limitation of function in any of the exertional functions.

A review of the record and the ALJ's opinion show that she considered plaintiff's daily activities; duration, location, frequency, and intensity of pain; precipitating and aggravating factors; dosage and effectiveness of medication; and, other treatment or measures used to relieve pain. See 20 C.F.R. §404.1529(c)(3). The ALJ did not disregard any significant evidence that would have dictated a different opinion. The ALJ's evaluation of plaintiff's subjective complaints was well reasoned and well-supported, and her conclusion as to the accuracy of plaintiff's statements was supported by the evidence and was not "patently wrong". *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).   For all of these reasons, the ALJ's decision must therefore be affirmed.

**II.   Disability**

For the second issue, plaintiff challenges the ALJ's finding that plaintiff has not been under a disability since June 4, 2019; however, in accordance with 20 C.F.R. 404.1520, the ALJ followed the five-step sequential evaluation process to determine that plaintiff was "not disabled".

At step one, the ALJ reasonably determined that plaintiff had not worked at the level of substantial gainful activity during the period from his alleged onset date of June 4, 2019 through his date last insured of through December 31, 2019. (*Id*.). In making this determination, the ALJ considered the plaintiff's earning records to verify that he was not earning an amount that met or exceeded the substantial gainful activity earning requirements. The ALJ also reviewed the medical records to verify that plaintiff had not recently begun employment. Although not mentioned in the decision, the ALJ also verified at the hearing that there was no work to look at during the relevant time period, which was the alleged onset date of June 4, 2019 through the end of 2019.

At step two, the ALJ found that plaintiff had the severe impairments of degenerative disc disease of the lumbar spine and obesity. In making this determination, the ALJ indicated she considered any impairments in the record, and only determined that degenerative disc disease of lumbar spine and obesity met the criteria for severe impairment. Additionally, on his application for disability, plaintiff referenced a back injury and the records referred to the prior microdiscectomy and spinal fusion and his obesity. Furthermore, plaintiff only discussed the limitation caused by his back condition at the hearing.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the "listed" impairments. At this step, the ALJ considered that no treating, examining, or non-examining medical source opined or otherwise indicated that plaintiff had an impairment or combination of impairments of listing level severity. In making this

determination, the ALJ referenced the medical evidence in relation to listings 1.04 and 1.00B2b. She also evaluated plaintiff's obesity in light of SSR 19-2p.

Before proceeding to step four, the ALJ determined that plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(c) with the limitations set forth *infra*. RFC is what an individual can still do despite his or her limitations. SSR 968p; *see also* 20 C.F.R. § 404.1545(a)(1). "The RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id*. "The RFC assessment must be based on *all* of the relevant evidence in the case record ...." SSR 96-8p; *see* 20 C.F.R. § 404.1545(a)(3).

The ALJ considered plaintiff's symptoms, the objective medical evidence, the medical opinions, and the medical findings. She listened to plaintiff's testimony at the hearing, and she also questioned the VE and presented a hypothetical to her regarding sedentary requirements and assessments for her opinion. The ALJ even expressly considered before discounting the assessment conducted by Dr. Frank Mikell that plaintiff could perform work at the light exertional level. Indeed, even though a physician thought the RFC should be higher, the ALJ erred on the side of caution.

At Step 4, the ALJ found that plaintiff was unable to perform any past relevant work through the date last insured. It was determined that plaintiff was previously a sales route driver, which was beyond plaintiff's exertional level.

Finally, at step 5, the ALJ found that jobs exist in significant numbers in the national economy that the plaintiff can perform, considering her age, education, work experience, and residual functional capacity. The ALJ considered all the applicable

factors and also questioned the VE with hypotheticals before obtaining information regarding occupations plaintiff would be capable of performing, all of which were sedentary exertional level, and were available in sufficient numbers in the national economy.

In closing, the plaintiff has the burden of establishing that he is disabled within the meaning of the Social Security Act. Plaintiff's vague assertion that he was clearly disabled under the rules is little more than an invitation for this Court to reweigh the evidence. Plaintiff has not identified a sufficient reason to overturn the ALJ's conclusion. The mere fact that he has obtained a disability placard is not dispositive and this Court is constrained to note that the State of Illinois definition of disability set out on the handicapped parking application is distinct from the standard employed by the SAA in determining whether an individual is entitled to benefits. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## CONCLUSION

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATED:** <u>August 31, 2022</u>

<u>/s/ Stephen P. McGlynn</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**